Our next case for argument is Sloan-Stanley v. King County or County of King. I'll reserve five minutes if I could. You might wait just one moment until we get all set up here. Usually, that would be the appellant. But I think he, did you set up over here? I just stepped up to the podium. Okay, fine. We don't exactly have a seating chart. We just have kind of tradition, I suppose. I figured I'd park it over there. That's fine. Ready? You may proceed. Okay. I represent Mr. Stanley, of course. I'm here because of a career thief and a professional liar, lifelong liar, said, my client said felonious words in a prison cell in 2016, a couple hours southwest of here. And then the following year, this Detective Pelley, the same detective from a prior case, he took these, the legal nullity of what the briefing refers to as Burleson's tale, transported it up to this region and told the four people on earth, Burleson's tale, the four people for whom it would cause absolute terror. The messenger being a senior detective, a heroic figure to them, an avuncular figure who had developed a rapport through a criminal case back in 2014 that put my client in that prison cell. The silver lining being that while he terrified these four prior victims from an old case with a legal nullity of Burleson's tale, he also created four perfect witnesses for a trial that would be built only on that Burleson's tale as the corpus delicti of the crime. The trial would be bolstered by the subordination of perjury that Burleson, this font of what the district court calls information, Burleson is a prison expert on scariness. Burleson, who has never ever been anywhere near Gary Ridgeway, the Green River Killer, testified that he's walked the yard with the Green River Killer and that Mr. Stanley, a terrific human being, is scarier than the Green River Killer. And on that basis, they put my client away for five and a half years, almost six. The dismissal order said there was one sentence that was set off with the word critically. That word, that sentence is quite loaded. It introduces the notion of contributory probable cause, stating that the complaint does not address the, quote, information in Burleson's tale. It does contribute to probable cause. That's very problematic on multiple levels, one being there is no such thing as contributing to probable cause. You have it or you don't. Another being that my failure as a pro se level draftsman of a complaint, apparently, was based upon the failure to meet a burden of this Burleson's tale, which is to say that the district court weighed, gave it weight, and that it did not find that I carried the weight, the corollary counterweight. Well, this court in Hervey with, I think, Judge Hawkins was on that panel, said there is no weight afforded Burleson's tale. Now, of course, we know that later they decided to, they admitted in Judge Owishi's court down the street here that they had no probable cause, but they needed it, and they couldn't even use a second Burleson embodied in Billy Temple, a second, I hate to use the term informant because informant is a legal status they cannot have. But they attempted to corroborate, it was really interesting the way they did it because obviously it is scientifically impossible to corroborate words spoken in 2016 and 2017. With that knowledge, they got themselves a listening device and a second groomed informant who was coached on how to bait my client. Well, they got neither. They got, and they didn't even bother to listen to the audio before they falsified the certification of probable cause. But the interview is videotaped and it's transcribed, and it says nothing about felony threats or harassment or any of this. And while I have listened to quite a bit of the 144 hours of audio, we don't really need to because they admitted in the trial court, in the criminal court, that there was nothing in there incriminating, not a word. There was kind of funny banter, and so what I did is trying to avoid being here in a 12B6 posture, I took what I knew and then added an appendix to the complaint. And I think nowadays, what we know now, the appendix would look a lot more like this, a blank piece of paper with just, I am Detective Christensen. Now we know a lot more, which obviously we're here on the record that exists, but this case never had probable cause. And then they attempted to expand it to a realm in which they could say probable cause exists, and then they suppressed their own corroborative, supposedly corroborative witness and the audio, which my client had to then fight for, and it took him a couple tries to get it. It is a Paul's graph of civil rights cases. And then the layers of deceit and duplicity began with the false probable cause. Then you have the perjured testimony about the Green River killer. Then you have a 402-month sentence imposed, and then here we are in this case, in the civil case, we have, you know, declarations that are under penalty of perjuries that are false, that are factually incorrect. I guess I was looking forward to questions. I could probably talk all day. Well, there was a, let me ask one. I'll accept the invitation. There, a county judge, was it Mason County? Judge Cobb. Yeah, I found probable cause to keep your client detained. He found no probable cause. He released him. Okay. Yeah, it says right there. I mean, it's handwritten. It's hard to see, but that was his release date. There's video of it, of him crying, of my client finally getting released. He made a little error, I think, you know, Judge Cobb. You know, a lot of times in trial court, it's just, it's a calendar. So he was like, well, I'm not going to do the whole dismissal of the case, but I'm letting you go because there's no probable cause to keep you. I mean, that's all in the transcript. You know, let's go back. Obviously, 2023 is out because that's after the fact of 2017, so we're not really considering that. But lay out for me, if you would, why Burleson's information was insufficient for probable cause. Okay, Burleson is a lifelong professional liar with no track record and no knowledge base of anything except we're in the same cell together, we talk about our cases. But even, you know, there's a Washington State published opinion reversing the conviction that talks about how Burleson didn't even know names of any of these people. And there's some fancy footwork in that certification that insinuates he did name a bunch of these people, which still wouldn't matter. Those are not details that would support probable cause. You need something. You know, even if you're applying Gates, which, you know, Hervey didn't apply Gates, and there's no case that says you can apply state law of probable cause in a judicial deception case. You're kind of going off on tangents there. So really, we got the guy in the cell, so that's a basis that he's in the same cell, right? Well, I mean, yeah. That's a basis. I'm not saying it's probable cause. I'm saying it's a fact. It's a fact. It's a fact. He's in the cell. The known liar at the time of the probable cause determination. What's the basis for that? That he's a liar? Yeah. Well, it's in the record, but there's probably 100 pages of criminal history on him, and they're all theft, credit card, or what do they call those, gift card fraud, I guess. Right. Stealing stuff, doing the, you know, street drugs. I mean, we do have, you know, I think you would do better if you looked at the facts rather than broad things, because I think the detective said that Burleson had, he suffered from a distinct lack of credibility, which is really not a good thing if you're trying to base probable cause, and wasn't that one of the basis for getting in this new person, Temple, and then putting another listening device in there? Yes. Lack is zero. Zero credibility. So there is nothing. It's a legal nullity, the first guy. And they knew that. They knew that corroboration with another version of the first guy would still be zero. So they needed that wire, that bug. And they got the bug, 144 hours, and they got the second guy, and both the recording and the guy said, no, he never threatened anybody, and they just joke around for 144 hours as prison cell mates. There's three of them in there, though. And what is the state of the record? There seems to be some contradiction with respect to whether Burleson had been possibly offered something in exchange for his testimony. The offer for Burleson, he had two felonies. He was in there because he was on the run from two felonies, and the e-mails are in the record where he's asking his defense counsel for, you know, the code word is, you know, they say they want treatment. Really what that means is it's a different, I guess, stream of imprisonment. You go into a different tier, a different level. You know, I've been in there representing clients. They're treated a little bit better. You know, it's what he was requesting, but there was also in the record where the detective was trying to get payment for him. That's also in the record, in his own notes. Are you done? Well, I've got four minutes left. I know. It's just you seem to be walking away without suggesting you were reserving your time. Are you done with your main argument? Yes, please. All right. Thank you. Other way. So just to be clear, you're splitting time. You're taking ten minutes, and then Mr. Zeldin-Rust will take the two minutes. Is that right? Yes, Your Honor. I represent the city defendants.  And Mr. Zeldin-Rust and I have divided up the legal issues, if that pleases the court. I will address judicial deception claims, and I will address the failure to allege that defendants acted with a reckless disregard to the truth. And then Mr. Zeldin-Rust will address prosecutorial immunity and the Monell claims. Counsel, are you planning to or would you please address whether or not probable cause existed in 2017 to support the whole arrest, trial, conviction of Mr. Stanley? Yes, Your Honor. And that is one of the elements, required elements, of the claims that rest on judicial deception. So judicial deception requires false statements or omissions that are material to the finding of probable cause. It also requires that those be made deliberately or with a reckless disregard to the truth. And so according to, and the district court correctly ruled, that the alleged false statements and omissions were not material to probable cause. According to the appellant's own allegations, the corrected, their version of the corrected certificate of probable cause, accurately reported all of the following true facts. That Randy Burleson, Mr. Stanley's former prison cellmate, came forward and told the detective defendants that he feared Mr. Stanley was going to kill four women when he was released from prison. Those were the victims from his earlier trial. And the certificate also says Burleson told the detective defendants that Mr. Stanley would at least three or more times daily give frightening outbursts with graphic detail about how he intended to kill the victims upon being released with a firearm by getting into a shooting stance in his cell. And then the second informant, again according to appellant's own allegations, the second informant, Tim Temple, corroborated that Mr. Stanley said he did have access to a firearm and intended to access it and obtain it after he was released. Yeah, that's pretty weak. That last, I mean, Temple is kind of a wash, wouldn't you agree? Counsel, what troubles me is that the whole basis for inserting Temple and the listening device was a representation that to the extent that Burleson provided me with useful evidence of the threat that Stanley poses, he suffers from a distinct lack of credibility. And then it details how Burleson on his own isn't sufficient, but then they didn't really get much of anything from inserting Temple on the listening device. And the certificate of probable cause discloses to the magistrate that Temple did not corroborate Stanley making death threats. So that was disclosed to the magistrate. And there were other points that Temple corroborated, but not the death threats. They don't really help too much. No, there are other indicia of reliability, other corroboration, but we're not hanging our hat on Temple. And the statement about reliability is in the context of securing a conviction at trial and the standard that would be applied there of beyond a reasonable doubt. That's not the same standard that is applied for probable cause to issue an arrest warrant. Those are very different standards. So that's a very important distinction to make. And the certificate of probable cause, when read fairly, again, we're talking about the corrected version of the certificate that is part of appellant's own allegations. It does not vouch for or overstate Burleson's credibility. It does not minimize his criminal history. It indicates that he had multiple felony convictions. It says he was in and out of prison multiple times and shared a cell with essentially hardened criminals. So there's plainly no intent or deliberate action to hide facts. One of the things that's troubling me is really this factual collision here on what happened. And we're not in the criminal world of the Frank's affidavit. We're not in the last case. We're in this 1983 case, right? And so we're in a civil case at the 12B6 stage where all of the allegations in the complaint are taken as true. So what I'm concerned about is it may be all come out in the wash in your favor in the end, but at this stage I'm wondering what's the basis given the standard of review for dismissing this Fourth Amendment violation at this stage? And that's why the, again, all of the facts that I am discussing are appellant's version of the facts. Our position is not to agree to any of these. Our position is not that there were no, so no, we do not agree to any of these. But they are saying that these were omissions and misstatements. And so the district court and the parties have looked at this corrected version of the Certificate of Probable Cause that appellants put forth. And they are saying these are all the corrected versions of the facts. And so all of the facts in there are ones that they are ascribing to. And when we look at the facts that are in that corrected version of the Certificate of Probable Cause, they do amount to probable cause. So appellants allege, again, in their own pleadings, their own version of the certificate. It accurately describes Mr. Stanley's own criminal history, which adds to the basis for probable cause. At the time, he was serving a prison sentence for cyberstalking involving death threats against those same four women. He served part of his sentence, was released, and then sent back to prison because he violated his conditions of release by contacting and threatening a fifth woman who'd worked with the original four victims. This accurate information about him being unable to abide by the conditions of his release added to the basis for probable cause. That's in their version of the certificate, which they say illuminates the true facts. What do we do about this credibility issue at this stage? At this stage, the question at this stage is whether any of the material, any of the alleged false statements were material to probable cause. The real question is whether the plaintiff has stated a claim for a Fourth Amendment violation. That's the ultimate question in his 1983 suit. And that then goes back to the affidavit of probable cause, of course. I believe he is stating claims based on judicial deception. To the extent he is saying there was no probable cause, to the extent he is saying someone like Burleson never could have formed a basis for probable cause, irrespective of any deception, that doesn't provide him relief here. Well, if he alleges a Fourth Amendment violation and the Fourth Amendment violation, that would support a judicial deception seizure and all the other related claims. I mean, it's a foundational question, isn't it, the Fourth Amendment violation? Yes, Your Honor, but it has to be deception that leads to the violation. So some of Appellant's arguments prove too much. They're saying that someone like Burleson never could have provided PC. They suggest that perhaps the court in 2017 made an error, irrespective of any deception. That question isn't before this court. That's all I'm saying on that ground. If the court has questions about Monell or prosecutorial immunity, should I give time to Mr. Zeldin-Rust? Thank you. Good morning, Your Honors. I'm John Zeldin-Rust. I'm here on behalf of King County and Senior Deputy Prosecuting Attorney Gary Ernstdorf. King County and Mr. Ernstdorf asked this court to affirm the district court's dismissal of the 1983 claims against them under Rule 12b-6, without prejudice and with leave to amend. The district court properly dismissed the Monell claim because, in effect, he did not allege any policy in his complaint. And he also didn't name any policy maker in his complaint. He failed to allege any longstanding custom or policy in accordance with that Senior Deputy Prosecuting Attorney Ernstdorf acted in accordance with. Finally, again, he did not identify any policy maker who allegedly ratified the conduct of the allegedly unconstitutional conduct of Mr. Ernstdorf. Now, that is, of course, a requirement. It's not sufficient to simply say the municipal entity ratified conduct. Now, as to Mr. Ernstdorf, he failed to allege or plead any specific non-conclusory relevant facts, such as dates, supporting the conclusion that Mr. Ernstdorf engaged in unconstitutional or allegedly unconstitutional activity that would fall outside the prosecutorial immunity shield. Now, looking at page 19 of his brief, he essentially admits this. He states that, you know, with limited, heavily redacted public records available prior to litigation, Mr. Stanley was only able to plausibly infer that Mr. Ernstdorf had been involved in the several months before the case was filed. Thus, it is highly plausible and inferable that, given the absence of litigation during this period, Mr. Ernstdorf was acting as an investigator and not an immune advocate. And he says this is a plausible inference that will be verified by discovery, which, of course, at the pleading stage, it's the obligation of the appellant to allege sufficient facts even absent any discovery. But I want to emphasize in this case that it is abundantly clear from his briefing below at the district court as well as his briefing before this court that he has ample evidence. He has ample access to a universe of facts from which he might be able to cobble together some kind of timeline or some kind of dates that might suggest, you know, what occurred, when it occurred. There's no even allegation in there as when Mr. Ernstdorf became involved in the case. Now, there's very few specific dates at all mentioned in the complaint. You know, we have fast forward to 2016, and then we don't have anything in 2017. So there isn't the whole purpose here is to put Mr. Ernstdorf on notice before he is, you know, dragged through the litigation process on a 1983 claim that, you know, hey, this is plausibly alleging something that I've done. I can kind of piece it together. And what Mr. Appellant has done here effectively is say, well, here's a box puzzle. It's got 100 pieces. I'm going to dump it on the table, and it's incumbent upon you, Mr. Ernstdorf, to put together and try to come up with what I'm alleging here. And by the way, the court, just take judicial notice of everything, okay? And that's not sufficient under Iqbal and some of the recent Supreme Court decisions. There has to be some sort of sufficient facts alleged, non-conclusory, that plausibly support a cognizable legal theory. And that is the difficulty in this case. Now, the allegations here, you know, they're very conclusory. Fraud, falsification of evidence, fabrication of PC, conspiracy, lies, labels and formulaic conclusions is what these are, okay? And it's, you know, something that is this serious really does require some specific allegations to support it. And, you know, we're not asking for a dissertation here. We're just asking for some basic things. When did he become involved? Was there some plan? When was it hatched? What was any contribution to the plan? You know, just a basic chronology. Isn't all of that knowledge within, doesn't all that knowledge lie within the minds of the defendants? I mean, how can he plausibly allege when a conspiracy was formed to frame him? Well, I think what he can plausibly allege under that, and it does require some specificity in the pleading, Your Honor, in order to allege conspiracy, but he has to allege, okay, well, just a conclusion of a conspiracy is insufficient. There has to be some, you know, well, he met, you know, they came up with something. And I think that the important point here is he has all this information. He just didn't take the time for whatever reason or find it necessary to plead it. And, you know, this case is, there's no prejudice to him in affirming the district court and saying just go ahead and plead it. You've got the information. Go ahead and plead it, a basic chronology and so forth. Now. Let me ask you a question. Does the complaint say that, say or allege that Mr. Stanley never made the statements to Berthelsen? Your Honor, no, I did not see that in the complaint. All right. I reviewed the complaint a number of times, and I didn't see anything in there to that effect. So what the system was faced with was a cellmate. They established that Berthelsen was a cellmate, that Stanley said these things to him. That was the basis for probable cause. Correct. Yeah, in my understanding, and that kind of goes to the city of Seattle, but my understanding is indeed that that was the primary basis for the probable cause. The stance, the I'm going to get these people, I'm going to take care of them, all these other things. And so, yes. You would think, and I can ask your friend on the other side about this, you'd think if that were the case that in his complaint Mr. Stanley would say that. I never said this. Correct. And I did not see any allegation that he never said it. I think that the allegation is just he's not credible. Okay. He's some kind of a recidivist felon. He's got no accurate history. So disbelieve it, it's not really worth something to that effect. I did not see an outright denial of him saying that. Thank you. All right. Thank you, Your Honor. We ask the court to affirm the 12B6 dismissal of Gary Ernst Dorfman King County. Thank you. The complaint is rife with statements and restatements that it is a fantasy threat that was never uttered. It even says the very last part in the facts, it says that they were false statements. Nobody corroborated the false statements, and nobody ever could in the future given that they were false. That's not my question. My question is, anywhere in the complaint, does it say Mr. Stanley never said this stuff? Yeah, that's the complaint. I was reading from the complaint. The false statements are attributed to Stanley. He's saying these are false statements. But does he say, I never said these things? Well, it doesn't say it like that because that's in the first person in the complaint. I mean, it doesn't make any sense just speaking the first person in a complaint. It says that the statements of Burleson attributed to Stanley were false, which means he never said these things. Not that it matters because Burleson could, if that were the standard, if a lifelong criminal could just say that Prisoner 142 said something and send them for 402 months, we would have a real problem with backlog here and everything else. But no, there's other places in the complaint where it says they are false. It's a fantasy threats. I call them fantasy threats at some point. Judge Wardle has a question. I'm sorry, Judge Wardle. Why don't you amend the complaint to state that more clearly and provide more details? You were given the opportunity to amend your complaint. Well, the complaint is extremely sufficient. It is reverse engineering of all the jury instructions with all the facts cut and pasted into them from summary judgment briefing and elements tables. And the dates are all right here. I mean, you want dates? There's like 10 different dates in here. I mean, the whole thing started in 2016, and then there's, you know, August 1st the detectives with King County prosecutors decided they were going to get have an operation whereby they would implant a second informant. These are our opponents' own words under penalty of perjury. And all the dates are right there. The thing was signed on August 10th, 2017. I mean, the entire chronology exists in here in the body. That's the appendix. But in the body, it says 2016 is when Burleson's tale was first told. 2017 is where the, and my client's on the other side of the mountains at this point, 2017 is where Detective Christensen goes to Mason County and hangs on every word of Burleson. And rather than asking, it says also in the appendix that my client's fantasy threats were yelled. Well, WCC, you know, I mean, there are prisoners everywhere. You don't yell without somebody hearing you. And there's no indicator that anybody asked any other inmates or counselors or anybody. And that's pleaded in the complaint. And, in fact, this court has recognized in Brome v. Bogan, it's also a basis for Brady against a prosecutor, where if you're telling people not to interview exculpatory witnesses, you don't have immunity if it's pre-filing. And that's what we have here. I would urge rereading of the complaint. You know, this is my tenth year of drafting complaints, and I think that I've been refining it every year, and I've never had this situation. The appendix was intended to offer a preliminary version of the Hervey exercise in order to avoid this situation. And Branch v. Tunnel, which preceded the Hervey case, made it clear that the heightened pleading standard is just barely heightened. Anyway, that's all I've got. I've got five seconds, so thank you. Thank you. Thank all counsel for your argument today. The case just argued of Stanley v. King County is submitted.
judges: McKEOWN, HAWKINS, WARDLAW